AMERICAN ARBITRATION ASSOCIATION
EMPLOYMENT ARBITRATION TRIBUNAL

Case#71 160 00045 09

In the Matter of the Arbitration between:

Wayne Stoker, Claimant

v.

Norris Cylinder/TriMas Corporation, Respondents

ADMINISTRATOR: Tyler A. Srygley

## AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement entered into by the above-named parties and having been duly sworn and having duly heard the proofs and allegations, and having considered the pleadings, exhibits, materials on file, the parties' arguments, applicable law, competent evidence, the credibility of the witnesses, briefs, relevant cases and the closing statements, make this AWARD, as follows:

### Procedural Background

Wayne Stoker (Claimant) filed a demand for arbitration. Specifically, Claimant contends that (1) he was discriminatorily transferred, (2) paid less than white employees, (3) subjected to a hostile work environment by white co-workers, (4) was bumped off his job during a lay-off while similarly situated white employees were not bumped resulting in his receiving a lower salary and/or a less desirable shift and (5) restricted from bidding on positions. After initiating this arbitration, Claimant contends he was discharged in retaliation for filing it. Alternatively, Claimant contends he was discharged on the basis of his race, African-American. Norris Cylinder Company (Norris Cylinder), and its parent company, TriMas Corporation (TriMas) (collectively Respondents) filed a Motion to Dismiss and a response.

Following notice and pursuant to the Rules, a preliminary hearing was held. A Scheduling and Procedures Order sets forth an agreed discovery schedule, hearing dates and the parties' agreement that Texas law governed the dispute and the Employment Arbitration Rules (Rules) of the American Arbitration Association (AAA) governed the arbitration as supplemented by the rules agreed to by the parties. The evidence established that the arbitration provisions were governed by the Federal Arbitration Act.

EXHIBIT A

Respondents based their Motion to Dismiss on Claimant's alleged failure to timely initiate arbitration. Claimant filed a response and Respondents filed a reply. The Motion to Dismiss was denied.

A certified court reporter was present and the transcript accurately reflects the exhibits admitted. (Tr. Master Index).

All of the witnesses were sworn, and the transcript accurately reflects the list of witnesses. (Tr. Master Index).

All counsel are to be commended for zealous advocacy at the hearing as well as the quality of the arguments and briefs submitted.

## Factual Background[1]

Norris Cylinder, located in Longview Texas, is a manufacturer of steel cylinders for the storage of oxygen and other gases. Claimant worked for Norris Cylinder for approximately twenty years in various jobs in both the high pressure and acetylene plant.

In 2003, 2008, and 2009 Claimant filed charges of discrimination. The 2003 charges led to a 2004 lawsuit in the Northern District of Texas. Federal District Court Judge Lynn granted Norris Cylinder's motion for summary judgment and dismissed the lawsuit.

The 2008 charges are part of this proceeding.

On July 7, 2009, while this arbitration was pending, Norris Cylinder discharged Claimant. That act led to the 2009 discrimination charges which are part of this proceeding.

## Analysis

While not every legal and factual argument asserted is addressed in this Award, each was considered. Not every pleading, legal theory, legal standard, allegation or fact is recited, but all were considered. Further, while every one was considered, not every fact or reason in support of the Award is recited. *UMass Mem. Med. Ctr., Inc. v. United Food & Commer. Workers Union, Local 1445*, 527 F.3d 1, 5 (1st Cir. 2008) ("It is the arbitrator's result, after all, not his reasoning, which is subject to judicial review."); *Zayas v. Bacardi Corp.*, 2008 U.S. App. LEXIS 8387 (1st Cir. 2008) (court may uphold arbitral award on grounds or reasoning not employed by arbitrator); *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1219 (5th Cir. 1990) *cert. denied* 501 U.S. 1206 (1991) ("this Court does not review the language used by, or the reasoning of, the arbitrators in determining whether their award draws its essence from the contract. This Court looks only to the result reached.").

---

[1] This Award assumes a familiarity with the background facts and the various industry terms used by the parties.

Not every time that a witness corrected or altered his/her testimony, and not every time a witness refreshed his/her recollection has been noted in this Award but all were considered. Not all contradictions in the evidence are recited, but all were considered. Every admitted exhibit was read or, in the case of digital recordings, viewed. Implicit in every factual determination is an evaluation of the witnesses' credibility.[2] All competent evidence and general principles of evidence were considered.[3] (Rule 30). References to evidence are not exhaustive or exclusive. Rather, they are intended to indicate some basis for the particular matter. Any evidence admitted for a limited purpose was considered only for that purpose. Any evidence to which an objection was sustained was disregarded as was any evidence which was presented, e.g., as an offer of proof as described in TRE 103, but subsequently determined to be inadmissable. *Government of Canal Zone v. Jimenez*, 580 F.2d 897, 898 (5th Cir. C.Z. 1978) *cert. denied* 439 U.S. 990 (1978) ("[a] judge, sitting as a trier of fact, is presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible.").

### Legal Standard[4]

Generally, a *prima facie* case of discrimination requires the claimant to show (1) he belongs to a protected group; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) others similarly situated outside of his protected class(es) were treated more favorably or otherwise show adverse treatment based on a protected characteristic. *Urbano v. Continental Airlines*, 138 F.3d 204, 206 (5th Cir. 1998) *cert. denied*, 525 U.S. 1000 (1998); *Johnson v. Hoechst Celanese Corp.*, 127 S.W.3d 875 (Tex. App.-Corpus Christi 2004, no pet.).

---

[2] *SEC v. Gann*, 2008 U.S. Dist. LEXIS 25562 *2 n. 1 (N.D. Tex. Mar. 31, 2008) *aff'd* 565 F.3d 932 (5th Cir. 2009) (credibility determinations encompass all of the circumstances under which the witness testified, which include: the relationship of the witness to the parties; the interest, if any, the witness has in the outcome of the case; the witness's appearance, demeanor, and manner of testifying; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he or she testified; the extent to which the witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail).

[3] Both the Federal Rules of Evidence (FRE) and the Texas Rules of Evidence (TRE) are used as guides.

[4] As a similar analysis applies to many of the claims, the legal standards are described in general terms. For example, the standards governing Title VII and the Texas Commission on Human Rights Act are the same, *Kenyon v. Western Extrusions Corp.*, 2000 U.S. Dist. LEXIS 391 (N.D. Tex. Jan. 6, 2000) and *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (Legislature intended to correlate TCHRA with federal law). Thus, relevant Texas decisions are cited. Further, when Title VII and §1981 claims are asserted as a basis for relief, the same elements of proof are required for both; thus the same analysis applies. *Decorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007); *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994), *cert. denied* 513 U.S. 1149 (1995). §1981 also encompasses retaliation claims. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, (2008). When a particular claim entailed additional elements, all of the required elements were considered.

Generally, to be a qualified employee, a claimant must show he was performing his job at a level which met his employer's legitimate expectations. *Ward v. Bechtel Corp.*, 102 F.3d 199, 201 (5th Cir. 1997); *Magana v. Tarrant/Dallas Printing*, 1998 U.S. Dist. LEXIS 13411 (N.D. Tex. Aug. 21, 1998), *aff'd.* 193 F.3d 517 (5th Cir. 1999).

Claimant must demonstrate that the employees being compared were in similar circumstances. *Lee v. Kan. City S. Ry. Co*, 574 F.3d 253, 259-60 (5th Cir. 2009); *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *Burns v. Check Point Software Techs., Inc.*, 2002 U.S. Dist. LEXIS 21278 (N.D. Tex. Oct. 31, 2002). To be similarly situated, a claimant must show that circumstances of comparable employees must be "nearly identical" to his circumstances. *Lee supra*, 574 at 259-60; *Little supra*, 924 F.2d at 97.

As a defense, the respondent may state a legitimate, non-discriminatory reason for its actions. In the final analysis, the claimant must show the protected trait or activity actually motivated the employer's decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000); *Lee v. Kan. City S. Ry. Co*, 574 F.3d 253, 259 (5th Cir. 2009).

In general, the courts defer to employers in their employment decisions. *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) ("discrimination laws [are not] vehicles for judicial second-guessing of business decisions."); *Anderson v. Taylor Publ'g Co.*, 13 S.W.3d 56, 59 (Tex. App.-Dallas 2000, pet. denied). If the employer subjectively believes that performance problems exist, courts generally will not second guess employers and act as personnel managers. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 959 (5th Cir. 1993); *Guthrie v. TIFCO Industries*, 941 F.2d 374 (5th Cir. 1991) *cert. denied*, 503 U.S. 908 (1992); *Kalsi v. Whataburger, Inc.*, 1998 U.S. Dist. LEXIS 1152 *14-15 (N.D. Tex. Jan. 23, 1998). Whether the performance problems actually existed or not is irrelevant when the employer believed there were performance problems and acted on that belief. *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1165 (5th Cir. 1993).

The law does not require that an employer fire employees only for good cause and does not require that the employer accurately evaluate the employee. *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993) *cert. denied*, 510 U.S. 976 (1993) (allegations of unfairness and that supervisor "shot first and asked questions later").

The law does not require that the employer accurately assess the employee, determine the accuracy of complaints or determine the accuracy of various incidents. *Davis v. First National Bank of Killeen*, 976 F.2d 944, 949 (5th Cir. 1992) *cert. denied*, 508 U.S. 910 (1993); *Guthrie v. TIFCO Industries*, 941 F.2d 374, 378 (5th Cir. 1991) *cert. denied*, 503 U.S. 908 (1992); *Steele v. SGS-Thomson Microelectronics, Inc.*, 962 F. Supp. 972, 978 (N.D. Tex. 1997) ("An employer may make an erroneous employment decision, so long as that decision is not made with a discriminatory motive").

### Limitations

A four year limitation period applies to hostile work environment claims, wrongful termination and transfer claims under 42 U.S.C. §1981. *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

Some of Claimant's theories are barred by limitations measured from the filing of Claimant's discrimination charge on May 8, 2008, e.g., discrete Title VII claims are subject to a 300 day limit and TCHRA claims are subject to 180 day limit. *AMTRAK v. Morgan*, 536 U.S. 101 (2002). These barred claims include but are not limited to allegations regarding remarks in 2005.[5] (Cl. Exh. 11).

As some allegations of barred claims overlap with claims that are not barred, e.g., §1981 claims based on some events in 2005 are not barred by limitations, and because limitations does not automatically bar the use of prior acts as background evidence in support of a timely claim, the following analysis includes Claimant's allegations of claims barred by limitations.

### Transfer

Since a lateral transfer which significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced can be a tangible employment action, *Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, (Tex. App.– Fort Worth 2009, pet. denied), it has been assumed without deciding that the lateral transfer described by Claimant can be a tangible employment action.

Norris Cylinder allows employees to bid for available jobs, and it also temporarily assigns employees to positions. Before Claimant bid for and then declined the Labor Grade 4 forge press relief operator job in August 2007, he was classified as a weld cell operator. After Claimant declined the position of relief operator, Norris Cylinder temporarily transferred him to the small acetone position in order to cover for an employee that was on a leave of absence. The weld cell operator and the small acetone position were the same pay grade–Labor Grade 3. After Claimant complained in April 2008 about his job assignment (Cl. Exh. 10), Norris Cylinder gave Claimant the option to return to the weld cell position or to remain in the acetone position. Claimant elected to remain in the acetone position. (Cl. Exh. 11, Resp. Exh. 38).

Based on a preponderance of the evidence and the credibility of the witnesses, Claimant did not establish all of the elements of a Title VII, TCHRA or §1981 claim with respect to this transfer. For example, the compensation for both positions were the same, the transfer was a temporary one, when given the choice of which position to occupy, Claimant chose the

---

[5] Barred claims include 2003 statements, such as the threat of a one week suspension. (Cl. Exh. 42 p. 303). Some claims are also barred by the summary judgment granted in the prior proceeding.

acetone position and in the acetone position, Claimant's contact with Mr. Hammond would be lessened.[6] (Tr. V2 215, V4 227-228, 263).

Further, Claimant relates the transfer to the fact that he turned down the forge press relief operator job. (Tr. V2 160). He did not provide examples of any other employees who were transferred after turning down a position. Under all of the circumstances present here, assuming without deciding that Norris Cylinder decided not to return Claimant to the weld cell position because he turned down the forge press relief operator job does not lead to the conclusion that any unlawful discrimination occurred.[7]

### Pay

Norris Cylinder uses various labor grades (Labor Grades) to assign pay rates–the higher the grade the higher the pay. At one time, employees' posted schedules included their pay grade. (Tr. V2 p. 34). Based on those postings, Claimant asserts he was paid less than white employees. Specifically, Claimant asserted that a white weld cell employee, Shane Davidson, was assigned to a Labor Grade 4 position, the top off position, but when he returned to the weld cell position, a Labor Grade 3 position, Norris Cylinder continued to pay Mr. Davidson Labor Grade 4. [Tr. V2 p. 38].

On February 15, 2008, Claimant complained about this issue to Respondents. (Cl. Exh. 6). Claimant testified he had heard that Norris Cylinder did not pay African-American employees at Labor Grade 4 after returning to weld cell but he did not see these postings. (Tr. V2 p. 41).

This claim is subject to the same analysis as his other discrimination claims. *Memberu v. Allright Parking Sys. Inc.*, 93 Fed. Appx. 603, 605 (5th Cir. 2004); *Montgomery v. Clayton Homes, Inc.*, 65 Fed. Appx. 508, 2003 WL 1922917, *1-2 (5th Cir. 2003), *cert. denied*, 540 U.S. 874 (2003).

Based on the evidence, African Americans were assigned to the same Labor Grade 4 position as Mr. Davidson and when African Americans were assigned to that position they were paid the proper rate for that position.

The possibility of discrimination arises from the claim that when African Americans were returned to a Labor Grade 3 position they were paid Labor Grade 3 rates while Norris Cylinder paid Mr. Davidson Labor Grade 4 when he was returned to the weld cell position.

---

[6] See discussion under the heading Hostile Work Environment.

[7] Claimant had previously turned down a forge press operator position in 2001 and 2005. (Resp. Exh. 19 and Cl. Exh. 42 p. 317).

With respect to Claimant, the possibility of pay discrimination arises if while he and Mr. Davidson performed Labor Grade 3 work, Norris Cylinder paid Mr. Davidson at Labor Grade 4 instead of Labor Grade 3.

Claimant acknowledged that when an employee regularly assigned to a Labor Grade 3 position temporarily worked in a Labor Grade 4 position, then Norris Cylinder's policy provided for Labor Grade 4 pay and that when an employee regularly assigned to a Labor Grade 4 position temporarily worked in a Labor Grade 3 position, then Norris Cylinder's policy provided for Labor Grade 4 pay. (Resp. Exh. 4 p. 12).

Respondents urged that due to the length of time he was assigned to Labor Grade 4, i.e., the top off position, Mr. Davidson was entitled to Labor Grade 4 pay when Norris Cylinder temporarily reassigned him from the top off position to the weld cell position, a Labor Grade 3 position. Mr. Brinkman testified that this assignment to the top off position was prompted because Mr. Brinkman performed that task and required surgery which resulted in his absence. (Tr. V3 pp. 133-34). According to Claimant's (Cl. Exh. 12) and Respondents' (Resp. Exh. 34) exhibits, Norris Cylinder first assigned Mr. Davidson to the top off position in August 2007 and paid him at Labor Grade 4 until Norris Cylinder regularly assigned him to the weld cell position on February 1, 2008. When Norris Cylinder moved Mr. Davidson back to the weld cell position on a regular basis on February 1, 2008, Norris Cylinder returned him to Labor Grade 3.

Based on a preponderance of the evidence and the credibility of the witnesses, Claimant did not establish all of the elements of a Title VII, TCHRA or §1981 claim with respect to a pay discrimination claim. For example, Respondents offered an explanation of the pay rate assigned to Mr. Davidson. Further, Norris Cylinder offered a Labor Grade 4 position, i.e., press operator position, in August 2007 to Claimant, the same month it regularly assigned Mr. Davidson to a Labor Grade 4 position. Additionally, when Norris Cylinder regularly assigned Mr. Davidson to the weld cell position on February 1, 2008, he was paid at Labor Grade 3.

### Hostile Work Environment

Claimant asserts he was subjected to a hostile work environment by white coworkers.

A hostile work environment or harassment claim generally requires: (1) protected class membership; (2) unwelcome harassment based on the protected class; and (3) harassment so severe or pervasive as to alter the conditions of employment. *Sparks v. Alrod Enters.*, 2003 U.S. Dist. LEXIS 7095 (N.D. Tex. Apr. 28, 2003). When the harassment is by coworkers another element is added–the employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.*

Occasional epithets, discourtesy, rudeness, teasing, offhand comments, and isolated incidents, unless extremely serious, are not unlawful harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

Title VII is not a general civility code for the workplace. A distinction exists between rude and inappropriate behavior and conduct which a reasonable person in the claimant's position would find severely hostile or abusive. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998).

Sporadic epithets, though offensive, are not severe or pervasive enough to create an objectively hostile or abusive work environment. *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 595-96 (5th Cir. 1995) *cert. denied*, 516 U.S. 974, (1995); *Celestine v. Citgo Petroleum Corp.*, 1995 U.S. Dist. LEXIS 20634 (W.D. La. Oct. 24, 1995) (racial epithets).

Without a doubt, Claimant believed he was subjected to a hostile work environment. However, his subjective belief is not enough. The courts require that the alleged harassment must not only be perceived by the Claimant as severe or pervasive but also must be objectively severe or pervasive such that a reasonable person would find the conduct hostile or abusive. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). A work place is abusive when it "is permeated with 'discriminatory intimidation, ridicule, and insult,' 477 U.S. at 65, that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'." *Id.*

In March 2008, Claimant complained of physical and mental abuse by coworkers, e.g., cussing and yelling in 2007-08 by Eric Dyer, a July 2007 chest bumping incident with Darin Young, a June 2005 verbal exchange with Joe Hammond and an admission by Joe Hammond of using a racial epithet.[8] (Tr. V2 pp. 45-48, 61, 189, 195-200, V4 p. 214; Cl. Exh. 8, 9 and 42 p. 324).

Based on a preponderance of the evidence and the credibility of the witnesses, Claimant did not establish all of the elements of a Title VII, TCHRA or §1981 claim with respect to a hostile work environment. For example, limitations bar any claims under Title VII or TCHRA for the June 2005 verbal exchange. Further, when all of the events described by Claimant are combined, they do not rise to the level of a hostile work environment. *Oncale, supra.*

### Bumping/Lay-off

In December 2008, Claimant urges he was bumped off his job during a lay-off while similarly situated white employees were not bumped.

According to Respondents, Norris Cylinder experienced a large loss of its acetylene business, forcing it to eliminate jobs, including Claimant's position. Norris Cylinder considered all of the employees whose jobs were eliminated either for a lay-off or a transfer to another position. Norris Cylinder based its decision to lay-off or transfer employees on the jobs available, the

---

[8] Claimant testified the racial epithet was not used in his presence, that he did not know where it was used, did not recall when the admission was made and that the admission may have been a response to a question by Claimant. (Tr. V2 pp. 196-200). In 2005, Claimant complained Mr. Hammond was being hostile in 2005. (Cl. Exh. 42 p. 324).

employees' training for those jobs as Norris Cylinder did not have the time or funds to retrain employees, seniority and past discipline.[9]

Norris Cylinder considered Claimant for two positions, fork lift driver and billet saw operator. Initially, Norris Cylinder offered Claimant the fork lift driver job, but Claimant asked about the billet saw operator position. Norris Cylinder determined that even though Claimant had run the billet saw in the past as the relief operator, changes in the billet saw position would require three days of retraining for him.[10] (Tr. V2, p. 26 and V4, pp. 57-60).

The billet saw position was a Labor Grade 3 and the fork lift position was a Labor Grade 2 or lower paid position. (Tr. V2 p. 67).

Claimant recalled that he had more seniority than the individual who was assigned the billet saw position but he could not recall who the person was. (Tr. V2 p. 67). Accordingly, Claimant could not offer testimony regarding the individual's training or experience.

Based on a preponderance of the evidence and the credibility of the witnesses, Claimant did not establish all of the elements of a violation of Title VII, TCHRA or §1981 with respect to bumping. For example, Norris Cylinder moved some employees from Labor Grade 3 to Labor Grade 1, Respondents offered a business reason to explain assigning Claimant to a Labor Grade 2 position, when Norris Cylinder learned it made a mistake in its assignment of Mr. Palmer, it corrected that mistake, (Tr. V4 p. 81) Claimant could not recall which individual was assigned to the billet saw position and thus could not describe his training or experience, and Mr. Palmer testified that Norris Cylinder retained both African Americans and whites with less seniority. (Tr. V2 p. 126).

### Bidding

In mid-2007, Claimant bid for and was awarded the position of forge press relief operator which paid more than his current position. (Tr. V2 p. 156). Subsequently, Claimant elected not to accept the position.

Norris Cylinder told Claimant that he would not be allowed to bid on positions for the next year. This restriction can be an adverse employment action, and during the time Claimant was not allowed to bid, there were some open positions for which he was qualified.[11]

---

[9] Claimant agreed that job knowledge and seniority were appropriate factors. (Tr. V2 p. 67).

[10] Mr. Brinkman also testified that the billet saw position changed a lot. (Tr. V3 p. 125).

[11] Claimant testified that the Norris Cylinder's normal practice was to prohibit bidding for another position for three months if an employee bid on and was awarded a position and then turned it down. (Tr. V2 p. 52). Mr. Tennimon, Norris Cylinder's plant manager, testified the normal practice was six months. (Tr. V4 p. 147). Respondents lifted the restriction on Claimant in May 2008 after he complained about it. (Cl. Exh. 10 and 11).

Based on a preponderance of the evidence and the credibility of the witnesses, Claimant did not establish all of the elements of a Title VII, TCHRA or §1981 claim with respect to bidding.

For example, from July 30, 2007 to May 12, 2008, Claimant held a Labor Grade 3 position. Only two Labor Grade 4 positions were available for bidding during that time - a forklift mechanic and a maintenance mechanic. (Tr. V2 pp. 220-223). The forklift mechanic position was filled in September 2007, within the three month period during which an employee who turned down an awarded position could not bid. (Resp. Exh. 42). The maintenance mechanic position was filled in December 2007, outside the three month period but within the six month period described by Mr. Tennimon. (Resp. Exh. 42). Based on the evidence, Claimant is not a mechanic (Tr. V2 p. 219) and in the past, Claimant did not bid on mechanic positions. (Tr. V2 pp. 221).

## Retaliation

Norris Cylinder fired Claimant for an alleged safety violation in which no one was hurt and no property damaged. Specifically, Norris Cylinder asserts Claimant operated the forge press without authorization.

Claimant notes he operated the forge press for seven years and Norris Cylinder awarded the position to him in 2001, 2005 and 2007 when he bid on the position.[12] Urging that the safety violation was a pretext for his discharge, Claimant also points to the following facts: (1) lesser discipline imposed on white employees who did damage property or did injure someone; (2) Deryle Porter, the only supervisor in the area at the time of the incident in question continues to believe that Claimant was "just trying to help." (TR V4 p. 210); and (3) the incident came to Norris Cylinder's attention only because Claimant reported that Mr. Whipkey used profanity. (TR V3 pp.47-48).

Respondents maintain Claimant operated the steel forge press when he was not currently trained and without the permission of his supervisor.[13] Rather, Claimant was assigned to operate a forklift at that time and had no valid reason to operate the press. Further, Respondents note that Claimant admitted that the assigned forge press operator did not tell him to operate the control panel. Additionally, Claimant notes slick floor conditions, the high pressure used, the speed of the press and the high temperatures can and have caused severe injuries.[14]

---

[12] Claimant ultimately declined the position all three times.

[13] Respondents make the distinction that offering the position to Claimant in 2001, 2005 and 2007 does not mean Claimant was current with training in operation of the press, and Respondents offered evidence that the position had changed over time and required retraining.

[14] Respondents note that when Claimant was assigned to operate the press years ago that an employee was injured.

Retaliation requires (1) a protected activity; (2) an adverse employment action; and (3) a causal link between them. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000); *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190 (5th Cir. 1991) cert. denied, 502 U.S. 1072 (1992); *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 296 (Tex. App.-Corpus Christi 2000, pet. denied).

Protected Activity  Based on a preponderance of the evidence and the credibility of the witnesses, Claimant engaged in protected activities, e.g., this arbitration filed in January 2009, the May 2008 EEOC Charge, his March 2008 complaints and the 2003 discrimination lawsuit.

Adverse Action  A Claimant must show that a reasonable employee would have found the challenged action materially adverse, which means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). Based on a preponderance of the evidence and the credibility of the witnesses, Claimant suffered an adverse action following his protected activity, e.g., Norris Cylinder fired Claimant in mid-2009.

Causal Link  Based on a preponderance of the evidence and the credibility of the witnesses, Claimant did not establish a causal link between his protected activity and any adverse action.

For example, Norris Cylinder justified its discharge of Claimant based on a safety violation, i.e., he engaged the pumps on the forge press without telling Mr. Whipkey that he was going to do so and the activation of the pumps startled Mr. Whipkey who was next to the forge press. (Cl. Exh.1, 40 and 45, Tr. V2 pp. 84-85, 93). Further, Claimant acknowledged the risk of serious injury if the press moves when someone is not ready for it. (Tr. V2 p. 150). Moreover, while some involved injuries or property damage, none of the other safety violations cited by Claimant involved employees operating someone else's equipment without authority or adequate training.[15]

## Discharge

Based on a preponderance of the evidence and the credibility of the witnesses, Claimant did not establish all of the elements of a Title VII, TCHRA or §1981 claim with respect to his discharge.

For example, Respondents justified the discharge of Claimant based on a safety violation, i.e., (1) he was not assigned to operate the forge press; (2) his training on the forge press was outdated; (3) he engaged the pumps on the forge press without being asked to do so by Mr. Whipkey or telling Mr. Whipkey that he was going to do so and the activation of the pumps startled Mr. Whipkey who was next to the forge press; (4) Mr. Van Auken believed Claimant did not understand that he had made an egregious safety error; (5) Claimant advised Norris

---

[15] See discussion under the heading Discharge.

Cylinder that he had not done anything wrong and under similar circumstances in the future he would take the same action and; (6) Mr. Van Auken believed Claimant under similar circumstances in the future would take the same action. (Tr. V2 pp. 85, 93, 98, 153-155, V3 pp. 48, 242-43, 262-64; Cl. Exh.1 and 40). Further, Mr. Van Auken made the decision to discharge Claimant but had not made the decision to fire other employees. (Tr. V2 p. 98, V3 pp. 208, 237, 269, V4 pp. 131-32). Moreover, based on the evidence and the credibility of the witnesses, safety violations by other employees did not occur in comparable circumstances as noted above.

## Conclusion

Based on all of the evidence and the credibility of the witnesses, all of Claimant's claims are denied.

Each party is responsible for his/its attorney's fees and expenses as incurred. The administrative fees and expenses of the American Arbitration Association and the compensation and expenses of the Arbitrator shall be borne in accordance with the parties' arbitration agreement.

This Award disposes of all parties and all claims in this case and disposes of this case in its entirety. This Award constitutes full settlement of all claims submitted to this arbitration. All claims not expressly granted are hereby denied.

April 26, 2010
Date

William E. Hartsfield
Arbitrator